IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| **FISHER BROWN BOTTRELL INSURANCE, INC.** | **PLAINTIFF** |
| VS. | CIVIL ACTION NO.: 3:22-cv-579-HTW-LGI |
| **PARKER M. RAINS AND EDGEWOOD PARTNERS INSURANCE CENTER d/b/a EPIC INSURANCE BROKERS AND CONSULTANTS** | **DEFENDANTS** |

## COMPLAINT

Plaintiff, Fisher Brown Bottrell Insurance, Inc. ("FBB" or "plaintiff"), asserts its complaint against defendants, Parker M. Rains ("Rains") and Edgewood Partners Insurance Center d/b/a EPIC Insurance Brokers and Consultants ("EPIC"), as set forth below.

Parties

1. FBB is a corporation incorporated under the laws of Mississippi with its principal place of business in Hinds County, Mississippi. For purposes of diversity of citizenship, FBB is a citizen solely of the State of Mississippi.

2. Rains is an adult resident citizen domiciled in Tennessee, who may be served with process at his residence address, 1877 Traditions Circle, Brentwood, Tennessee 37027. For purposes of diversity of citizenship, Rains is a citizen solely of the State of Tennessee.

3. EPIC is a corporation incorporated under the laws of California in the business of selling insurance services and products with its principal place of business in San Francisco, California. EPIC may be served with process of this Court through its registered agent, National

1

Registered Agents, Inc., 330 N. Brand Blvd., Ste. 700, Glendale, California 91203. For purposes of diversity of citizenship, EPIC is a citizen solely of the State of California.

Jurisdiction

4. This Court has subject matter jurisdiction over this lawsuit.

5. Relief sought by plaintiff includes an injunction, specific performance, and other equitable relief in addition to monetary damages.

6. This Court has diversity jurisdiction over the parties pursuant to 28 U.S.C. §1332. The parties are citizens of different states, as set forth herein in paragraphs 1-3 above, and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs. Plaintiff has already incurred actual damages exceeding the amount of $75,000.00; those damages continue to increase. Plaintiff seeks a punitive damages award of at least $5,000,000.00.

7. This Court has personal jurisdiction over Rains pursuant to Mississippi's long-arm statute, Miss. Code Ann. §13-3-57. Rains entered into a contract with plaintiff, a Mississippi company, to be performed in whole or in part by any party in Mississippi. In addition, Rains has committed a tort in whole or in part in Mississippi against plaintiff, a Mississippi company, by breaching his fiduciary duties to plaintiff and by tortiously interfering with the contractual and business relationships held by plaintiff with others. Rains has also committed a tort in whole or in part in Mississippi against plaintiff, a Mississippi company, by violating the Mississippi Uniform Trade Secrets Act as set forth in Count Two of this Complaint.

8. This Court has personal jurisdiction over EPIC pursuant to Mississippi's long-arm statute, Miss. Code Ann. §13-3-57. EPIC has committed a tort in whole or in part in Mississippi against plaintiff, a Mississippi company, by tortiously interfering with the business relationships and contracts held by plaintiff with others. In addition, EPIC tortiously interfered with the

business relationship between plaintiff, a Mississippi company, and its employee. EPIC has also committed a tort in whole or in part against plaintiff, a Mississippi company, by violating the Mississippi Uniform Trade Secrets Act as set forth in Count Two of this Complaint. By all of those actions, Defendants caused injury to be incurred in Mississippi by Plaintiff.

9. The exercise of personal jurisdiction over Rains and EPIC is consistent with due process. Rains and EPIC have purposefully availed themselves of the benefits and protections of the State of Mississippi by establishing minimum contacts with this State and the exercise of jurisdiction over these defendants does not offend traditional notions of fair play and substantial justice.

Venue

10. Venue is proper in this Court pursuant to 28 U.S.C. §1391 because the claims alleged herein arose in the Southern District of Mississippi, Northern Division. The plaintiff's principal place of business is in Hinds County, Mississippi. A substantial part of the events or omissions at issue giving rise to plaintiff's claims occurred in this District through defendants' tortious interference with contracts of plaintiff with its customers. Defendants also violated Mississippi's Uniform Trade Secrets Act by taking and using confidential or proprietary information belonging to plaintiff. Additionally, defendant EPIC tortiously interfered with the contract between plaintiff, a Mississippi company domiciled in this District, and its employee. Additionally, defendant Rains breached his contract with plaintiff and breached his fiduciary duties owed to plaintiff.

Facts

11. Rains is a licensed insurance agent.

12. From September 2009 to September 2022, Rains was an employee of FBB and/or its predecessors in interest.

13. As part of their employer-employee relationship, FBB's predecessor in interest, Fisher-Brown, Incorporated, and Rains entered a written contract dated September 14, 2009, and titled "Confidentiality, Nonpiracy and Nonsolicitation Agreement," (the "Agreement" herein), a copy of which is attached hereto as Exhibit "A." Plaintiff is entitled to enforce that Agreement as the successor by merger of Fisher-Brown, Incorporated. During his employment with Plaintiff, Rains was not a mere employee; he also was a manager with high levels of responsibility and discretion.

14. After leaving FBB's employ, EPIC employed Rains as its "Managing Principal within its Property and Casualty Practice." https://www.epicbrokers.com/insights/epic-welcomes-parker-rains.

15. EPIC is doing business as an insurance brokerage and consulting firm. https://www.epicbrokersus.com/about/.

16. EPIC sent correspondence to FBB via email on September 13, 2022, indicating that it hired Rains on September 6, 2022, and stating that "[s]ince then, several customers who Mr. Raines [sic] produced and served while employed by [Plaintiff have made their decision to appoint EPIC as their broker of record with respect to the insurance policies of these customers." Exhibit "B." That correspondence unambiguously acknowledges that Rains has accepted business from Plaintiff's customers.

17. EPIC's September 13, 2022, email further acknowledged the existence of Rains' Agreement with FBB but ignored important and pertinent provisions of the Agreement – including but not limited to provisions prohibiting Rains and, therefore, EPIC, from accepting business from a FBB customer for two (2) years from the date of Rains' departure from FBB, actions for which FBB pursuant to its contract with Rains is entitled to monetary damages and all other remedies provided by law or in equity.

18. While employed as Managing Principal for EPIC, Rains has used his knowledge of FBB's customer account information, including customer names and identity of key personnel, policy expiration information, and/or data and information about or relating to FBB's customers, including contact information, and/or other information reflecting or relating to FBB's business.

19. While employed as Managing Principal for EPIC, Rains has used the information described in the immediately preceding paragraph, which was either memorized, printed, written or otherwise acquired. He has made use of such information for his own benefit, and/or the benefit of EPIC or other persons. He has divulged or disclosed such information to EPIC and/or others.

20. Rains has, either directly or indirectly, contacted one or more FBB customers, policyholders, or insureds for the purpose of inducing them to cancel, lapse or fail to renew an insurance policy, bond or other contract issued through FBB.

21. To the extent that FBB customers have contacted Rains, either directly or indirectly, he has not advised or informed them of his contract with FBB that prohibits him from accepting any business from any FBB customer or assisting any other person in soliciting any

FBB customer, or taking any other action directly or indirectly competitive with respect to customers of FBB for twenty-four months after his departure from FBB. Exhibit "A."

22. Since leaving FBB, Rains has called on, solicited, attempted to obtain, accepted, or otherwise transacted insurance business with customers of FBB having policies or bonds issued through FBB. Pursuant to the correspondence from EPIC dated September 13, 2022, and attached hereto as Exhibit "B," it is established that "several customers who Mr. Raines [sic] produced and served while employed by [FBB] have made their decision to appoint EPIC as their broker of record with respect to the insurance policies of those customers." As a result, FBB has lost revenue in the form of commissions, and/or will lose future revenue in the form of commissions. Furthermore, the termination of each relationship diminishes FBB's opportunity to expand its business with each customer and to obtain new business via referrals from them.

23. Since leaving FBB, Rains has aided or assisted EPIC in soliciting FBB customers.

24. Since leaving FBB, Rains has served as an insurance advisor, consultant or risk manager for customers of FBB.

25. Since leaving FBB, Rains has taken actions which directly and indirectly are competitive with FBB with respect to customers of FBB.

26. Rains willfully, knowingly and deliberately breached his contractual obligations to FBB. He was aware of his duties under the Agreement attached hereto as Exhibit "A." He has no excuse for deliberately breaching the contract.

27. As an agent and employee of FBB, Rains owed FBB a duty of loyalty and fidelity. He occupied a position of trust. He had a responsibility to refrain from taking personal advantage of, or usurping, FBB's corporate opportunities.

28. In fact, in his management position at FBB, Rains has worked with and advised

attorneys for FBB regarding an employee's breach of, and enforcement of, this very same contract attached as Exhibit "A," or one substantially similar. Rains is aware that the terms of the Agreement have been found enforceable by the Mississippi Court of Appeals, and that a willful violation of the Agreement's terms justified an award of punitive damages, as set forth in *Raines v. Bottrell Ins. Agency, Inc.*, 992 So. 2d 642 (Miss. Ct. App. 2008).

29. Rains, therefore, has knowledge of FBB's interpretation of the Agreement, and of the enforceability of the Agreement. As a manager, he has participated in enforcing the Agreement's terms. Rains nonetheless is deliberately breaching the Agreement.

30. When Rains gave his notice of resignation at FBB, he received clear and unequivocal notice that FBB would insist on enforcement of its rights under the Agreement at issue. He was further clearly and unambiguously informed that FBB would not waive its rights, or ratify any breach, under the Agreement.

31. Nonetheless, Rains has deliberately and actively breached his contractual obligations to FBB. He has directly and actively solicited the business of FBB's customers. By committing such breaches, Rains has demonstrated that his breaches are deliberate, intentional, and malicious and that he has complete and utter disregard for the rights of plaintiff.

32. All of Rains' actions described herein have been conducted within the course and scope of his employment by EPIC. EPIC is vicariously liable for his breaches. In addition, EPIC is independently liable for its own actions. EPIC, through its managing agents and officers, actively encouraged and participated in the legal breaches described herein. EPIC has notice and knowledge of Rains' contract with FBB, as evidenced by its citation to the Agreement in its September 13, 2022, letter, but has indicated its intent to aid in the breach of that Agreement. Exhibit "B."

## Count One: Injunction and Specific Performance

33. FBB is entitled to, and requests, an immediate preliminary injunction against all defendants, prohibiting them from continuing to breach obligations under the Agreement, and prohibiting them from using or disclosing FBB's confidential information, and prohibiting them from soliciting FBB's customers or otherwise interfering with FBB's relationships with those customers. FBB further requests that Rains and EPIC be enjoined to terminate their relationships that were formed in violation of the contractual agreement between Rains and FBB. FBB is further entitled to, and requests, a permanent injunction granting the same relief, and a judgment of specific performance of Rains' contractual obligations.

## Count Two: Violation of Trade Secrets Act

34. Defendants have violated the Mississippi Uniform Trade Secrets Act, Miss. Code Ann. §75-26-1 *et seq.* FBB is entitled to an injunction under that Act. FBB is further entitled to actual damages and exemplary damages under Miss. Code Ann. §75-26-7. Furthermore, FBB is entitled to attorney fees under Miss. Code Ann. §75-26-9.

35. While employed as Managing Principal for EPIC, Rains has used information obtained from FBB that "[d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use," (Miss. Code Ann. §75-26-3(d)), which was either memorized, printed, written or otherwise acquired by Rains. He has made use of such information for his own benefit, and/or for the benefit of EPIC or other persons. He has divulged or disclosed such information to EPIC and/or others.

36. The information taken and used by Rains was the subject of efforts by FBB to maintain its secrecy that are reasonable under the circumstances. Miss. Code Ann. §75-26-3(d).

37. FBB's efforts to maintain the secrecy of its confidential information included requiring its employees, such as Rains, to sign the Agreement attached hereto as Exhibit "A" which states that employees "will treat all materials, and matters reflecting or relating to Corporation's business as confidential information and…will not disclose, divulge, copy or transmit such information in any way to any person outside of Corporation's employ during or after Employee's employment by Corporation." Exhibit "A."

### Count Three: Breach of Fiduciary Duty (Defendant Rains)

38. As an agent of FBB, who was entrusted with the confidential information and trade secrets of FBB, and who was granted opportunities to engage in and profit from business with FBB's customers, Rains owed a fiduciary duty to FBB. He breached that duty by forming an intent to leave FBB and misappropriate FBB's trade secrets and business relationships. He then in fact did misappropriate those valuable assets and resources.

39. Rains occupied a position of trust in his employment at FBB. Rains has worked with and advised attorneys for FBB regarding an employee's breach of this very same Agreement attached as Exhibit "A," or one substantially similar.

40. Rains, therefore, has knowledge of FBB's interpretation of this Agreement, and as a manager, he has participated in enforcing the Agreement's terms. Rains nonetheless is breaching the Agreement.

### Count Four: Breach of Contract (Defendant Rains)

41. As shown above, Rains breached his contractual obligations to FBB. In direct contravention of his contractual obligations to FBB as set forth in Exhibit "A," Rains has directly and actively solicited the business and customers of FBB. As evidenced by Exhibit "B," Rains

has also accepted the business of FBB customers in violation of his Agreement with FBB. He is liable therefore.

### Count Five: Tortious Interference with Business Relationships

42. All defendants knowingly and tortiously interfered with existing, ongoing business relationships between FBB and its customers. They are jointly and severally liable therefore. In addition, EPIC tortiously interfered with FBB's business relationship, and with its contract with Rains. EPIC is liable for tortious interference with said contract and business relationship.

### Count Six: Breach of Duty of Good Faith and Fair Dealing (Defendant Rains)

43. Rains' deliberate, unjustified repudiation of his duties under the Agreement constitutes a breach of the duty of good faith and fair dealing. He is liable therefore.

### Count Seven: Constructive Trust

44. A constructive trust should be imposed upon all contracts, premiums, commissions, and profits from the business garnered by defendants' misconduct and breaches.

### Prayer for Relief

45. FBB prays for the following relief:

   a. Against Rains: A preliminary injunction prohibiting Rains from continuing to act in violation of the Agreement and prohibiting him from otherwise interfering with FBB's business relationships, or misappropriating and using FBB's trade secrets, confidential information and business opportunities, or interfering with FBB's business relationships. Against EPIC: A preliminary injunction prohibiting it from permitting, authorizing, or assisting Rains from committing the acts

        described in this paragraph. Against both: a preliminary injunction requiring defendants to terminate the contracts and relationships that have been unlawfully formed in violation of the agreement at issue.

    b.    A preliminary injunction prohibiting EPIC from interfering with FBB's contracts with its employees or agents, or from misappropriating and using FBB's trade secrets, confidential information and business opportunities, or interfering with FBB's business relationships generally, or raiding FBB's employees.

    c.    A permanent injunction to the same effect.

    d.    A judgment of specific performance, requiring Rains to comply in all respects with the Agreement.

    e.    Against Rains: An award of the non-exclusive contractual penalty, set forth in the Agreement, of 150% of the average annual commissions payable with respect to policies and bonds issued to or for the benefit of such customers as are described in the Agreement.

    f.    An award of actual damages for past and future lost income resulting from all defendants' breaches.

    g.    An award of punitive, exemplary damages sufficient to punish all defendants for their willful and malicious breaches as described herein, and to deter other similarly situated entities or persons from similar misconduct, in the amount of at least $5,000,000.

    h.    An accounting of all information, assets, opportunities, and funds that have come into defendants' possession or control through their breaches.

      i.      Prejudgment and post-judgment interest.

      j.      Attorney fees.

      k.      Costs and expenses of litigation.

WHEREFORE, PREMISES CONSIDERED, plaintiff respectfully requests that the Court enter a preliminary injunction, and a final judgment, granting all relief set forth herein, and all other relief found to be appropriate.

Respectfully submitted,

Fisher Brown Bottrell Insurance, Inc.

  s/ William F. Ray
By:   William F. Ray

OF COUNSEL:
William F. Ray (MSB No. 4654)
Kathy K. Smith (MSB No. 10350)
WATKINS & EAGER PLLC
400 East Capitol Street
Jackson, Mississippi 39201
Post Office Box 650
Jackson, Mississippi 39205
Telephone:   (601) 965-1900
Email: wray@watkinseager.com
        ksmith@watkinseager.com